UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14248-RGS

BLOCK ISLAND FISHING, INC.

v.

JAMIE ROGERS

MEMORANDUM AND ORDER
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

March 3, 2016

Block Island Fishing, Inc., owns and operates the fishing vessel *Hedy Brenna*. Jamie Rogers is a commercial fisherman and former employee of Block Island who was injured while working on board the *Hedy Brenna* in October of 2013. This dispute is over an admiralty doctrine known as "maintenance and cure." Maintenance and cure is "designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962).

The essential facts, viewed in the light most plausible to Rogers as the nonmoving party, are as follows.

In August of 2013, Rogers moved with his wife, two children, and brother-in-law into a single-family home in Bristol, Rhode Island. Rogers paid the first month's rent of $1,600, but cannot recall making subsequent payments. In September of 2013, Rogers joined the crew of the *Hedy Brenna*. On October 3, 2013, during a fishing voyage, Rogers fell off the top bunk while sleeping and injured his torso. On returning to port, Rogers was diagnosed and treated for a fractured rib. During October, Block Island paid Rogers $650 in maintenance and $1,857.78 in lost wages (in addition to his catch share from the October voyage).

In November, Rogers was evicted from the Bristol apartment and moved with his family to a less expensive apartment in Fall River, Massachusetts, where he paid $625 in monthly rent. On November 4, 2013, Dr. Christian Campos, Rogers's treating physician, cleared Rogers to "return to work without restrictions." Dkt. # 44-6. However, in December of 2013, Rogers was diagnosed with pneumonia and admitted to hospital for three weeks. On February 20, 2014, Dr. Campos reported that Rogers's condition was improving, and while he still required the use of pain medication, he could increase his level of physical activity "without restrictions." Dkt. # 44-13. In March of 2014, Rogers left the Fall River apartment and moved to

Sparta, Tennessee, where he lived with his brother, to whom he paid $800 each month in lieu of rent.

In May or June of 2014, Rogers purchased a 38-foot boat for $2,500, on which he lived briefly before returning in June to Fall River. On June 19, 2014, Rogers was examined by Dr. Melanie Cardoza for pain in his lower back and left leg. Rogers reported that he had returned from a fishing trip the previous day, and that he was planning another fishing trip the following day. By July of 2014, Rogers was captaining the fishing vessel *Kelly Ann*. However, in August of 2014, Dr. Campos examined Rogers and provided him with a letter indicating that he was not yet fit to return to work as a fisherman. On November 18, 2014, Dr. Campos examined Rogers and concluded that his condition had improved to the point that no "further formal follow-up" was necessary. Dkt. # 44-37.

The dispute over maintenance and cure involves nine months of back and forth correspondence between Neil Stoddard, an agent for Block Island, and Daniel Alberto, a paralegal at Latti & Anderson, the firm representing Rogers. The sticking point was Rogers's claimed expenditures for rent. On January 24, 2014, Alberto made a demand on Rogers's behalf of maintenance and cure in the amount of $72 per day, listing Rogers's monthly expenses as $1,600 for rent, $119.25 for gas, $61.28 for electricity, and

$362.50 for food.  In the exchange that followed, Stoddard objected that the "cash receipts" he had been provided "have nothing on them to identify them as a rent payment and I find it hard to believe that there is no sort of written agreement between your client and his landlord."  Dkt. # 44-14.  On March 27, 2014, Alberto mailed Stoddard a copy of the lease of the Bristol apartment.[1]  When Stoddard further objected after learning that Rogers had moved from Bristol to Fall River, Alberto replied that he had provided "all of Mr. Rogers [sic] living expenses and all of his medical records."  He also threatened to seek punitive damages on Rogers's behalf, unless the requested maintenance and cure was immediately forthcoming.  *Id.*

In late June, Block Island relented and paid a total of $68,891.41 in cure to Rogers's health care providers.  On July 23, 2014, a maintenance payment of $10,800.06, based on a rate of $63.26 per day, was made to Rogers for the period from October 2013 through April 23, 2014.[2]  On July 25, 2014, Alberto forwarded a copy of Rogers's lease on the Fall River apartment (from which Rogers had moved in March of 2014).  After another

---

[1] The Bristol lease indicated that the $1,600 for rent included utilities.

[2] The daily rate was calculated using Rogers's stated monthly rent for the Bristol apartment of $1,600 (utilities included), and monthly food costs of $279.80, based upon the United States Department of Agriculture's Moderate Cost Plan for an individual of Rogers's age living in a four-person family home.

threat by Alberto to seek punitive damages, Block Island forwarded an additional maintenance check to Rogers in the amount of $11,956.14, based on the same rate of $63.26 per day.

On November 25, 2014, Block Island filed this Complaint seeking declaratory judgment as to the amount of retroactive maintenance owed to Rogers (Count I); a declaratory judgment as to whether it has any continuing obligation to pay maintenance and cure; and a declaratory judgment as to whether it is entitled to the return of overpayments attributable to Rogers's failure to provide accurate information regarding his expenses and medical treatment (Count II).  Rogers responded by filing a counterclaim on March 6, 2015, later amended, alleging negligence under the Jones Act, 46 U.S.C. § 30104 (Count I), unseaworthiness (Count II), continuing maintenance and cure (Count III), negligent or intentional failure to provide maintenance and cure (Count IV), and lost wages (Count V).  Block Island now seeks summary judgment on both Counts of its Complaint, as well as on Counts III and IV of Rogers's counterclaim.  Block Island also demands $13,027.80 from Rogers in alleged maintenance overpayments.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment will not be granted if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden has been carried, the nonmovant must show more than a "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and more than a "mere . . . scintilla" of evidence. *Anderson*, 477 U.S. at 252.

The governing law is not in dispute. A seaman who is injured or who falls ill while "in service of the ship" is entitled to maintenance and cure. *LeBlanc v. B.G.T. Corp.*, 992 F.2d 394, 396 (1st Cir. 1999). The entitlement persists until the seaman has reached the point of maximum recovery, that is, the point when further treatment, even though it might slow or arrest a condition, or its symptoms, will not result in any material improvement. *Whitman v. Miles*, 387 F.3d 68, 72-73 (1st Cir. 2004). While a seaman is to be treated with special indulgence as a "favorite of admiralty," *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 56 (1st Cir. 1985) (Breyer, J.), he is

entitled to recover maintenance only for his actual living expenses. *Johnson v. United States*, 333 U.S. 46, 50 (1948).

Block Island contends that Rogers, acting through his law firm, induced maintenance payments based on a monthly rental expense of $1,600, when in truth, he was paying at most half that amount. The undisputed evidence is that Rogers vacated the Bristol apartment in November of 2013, and that his monthly rent since leaving Bristol has not exceeded $800. It is also undisputed that in calculating the daily maintenance due Block Island relied on the $1,600 monthly rent figure and that an overpayment resulted. The open issue is whether the court can – or should – do anything about the maintenance overpayment in a restitutionary sense.

The leading Fifth Circuit case, *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 726-728 (5th Cir. 2013), answers in the negative.[3] "[O]nce a shipowner pays maintenance and cure to the injured seaman, the payments

---

[3] *But see Boudreaux*, 721 F.3d at 728-729 (Clement, J., concurring in the judgment) ("I believe that . . . a counterclaim [for restitution] is possible under maritime law and general equitable principles."). There appears to be no First Circuit opinion on point.

can be recovered only by offset against the seaman's damages award — not by an independent suit seeking affirmative recovery." *Id.* at 728.[4]

As did the Fifth Circuit, the court recognizes that two competing values of equal significance are at play: "[P]rotecting seamen from the dangers of the sea, and employers from dishonesty." *Id.* at 727-728.  Admiralty law, however, strikes the balance in favor of the former.  Because of the seaman's protected status as a "ward[] of the admiralty," *Harden v. Gordon,* 11 F. Cas. 480, 485 (C.C.D. Me. 1823) (Story, J.), "[w]hen there are ambiguities or doubts, they are resolved in favor of the seaman." *Vaughan,* 369 U.S. at 532.

---

[4] Block Island cites two district court cases from outside the First Circuit that arrived at a contrary result. *See Souviney v. John E. Graham & Sons,* 1994 WL 416643, at *5 (S.D. Ala. 1994) ("To the extent that [maintenance] benefits have been paid by the defendant, the defendant is entitled to recover the amount of those benefits by way of judgment against the plaintiff."); *Quiming v. Int'l Pac. Enters., Ltd.,* 773 F. Supp. 230, 235–37 (D. Haw. 1990) (granting a counterclaim for restitution because plaintiff was never legally entitled to receive maintenance and cure).  There are distinguishing differences of fact in these cases even if they were thought persuasive.  In *Souviney* and *Quiming*, as in *Boudreaux*, the seamen in question misrepresented their medical history prior to going to sea.  As a general rule, a shipowner has no obligation to pay maintenance when a seamen fraudulently conceals a relevant medical condition.  *See, e.g.*, *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968).  In this case, there is no dispute that Rogers incurred his injury after setting to sea.  The court also notes an unreported opinion from the Ninth Circuit, *Vitcovich v. Ocean Rover O.N.*, 106 F.3d 411 (Table), 1997 WL 21205 (9th Cir. 1997), which affirmed a district court's grant of summary judgment for a claim of reimbursement for overpaid maintenance.  That opinion has no precedential force.

Echoing the Fifth Circuit, I agree that "concern with the egregious facts here is understandable, but the sweeping [restitutionary] counterclaim it endorses would mark a significant retreat from our hoary charge to safeguard the well-being of seamen." *Boudreaux*, 721 F.3d at 727.[5]

Block Island also requests summary judgment on Count IV of Rogers's counterclaim, in which he alleges that Block Island negligently or intentionally failed to promptly provide maintenance and cure prior to November 3, 2014. While the court recognizes that "an employer is entitled to investigate a claim for maintenance and cure before tendering any payments to the seaman, *id.* at 728, this is a defense to and not a shield against a negligence claim. Rather, as with most issues of negligence, the issue of the provision of prompt and proper maintenance and cure is a matter for the jury.

Block Island next seeks a declaratory judgment establishing a specific date upon which its maintenance and cure obligations to Rogers came to an end. Block Island contends that the obligation terminated on July 31, 2014,

---

[5] The result is ameliorated to some degree by the fact that it is the law firm, and not Rogers, that kept the $1,600 figure in circulation. Block Island also, as the Fifth Circuit pointed out in *Boudreaux*, is entitled to offset the excess payment against any award that Rogers might win on his Jones Act claims.

the date on which Rogers was sufficiently healthy to return to work as a fisherman, while Rogers argues that he has still not reached maximum medical improvement, and is therefore entitled to ongoing maintenance. On this issue, the relevant question before the court is not whether Rogers returned to work as a fisherman (which could be explained by necessity as well as by cure), or whether he has been restored to perfect health. *See Vaughan*, 369 U.S. at 531, 534-535; *see also Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 299 (9th Cir. 1966). The obligation to provide maintenance extends only so long as a seaman is capable of *improving* through medical treatment, *see Whitman*, 387 F.3d at 72, and terminates when "medical science can do no more." *Haskell v. Socony Mobil Oil Co.*, 237 F.2d 707, 709 (1st Cir. 1956).

The record evidence establishes that Dr. Campos, who was Rogers's principal treating physician, while determining as of September 8, 2014, that Rogers had not fully recovered, came to a different conclusion on November 18, 2014, when he found Rogers's condition to have substantially improved. He wrote that Rogers could "increase his level of physical activity as tolerated without restrictions," and that he was "discharg[ing] him from further formal follow-up with me." Dkt. # 44-37. While Rogers complains that he has trouble breathing and continues to feel pain in his right side, he offers no

medical evidence that contradicts his own doctor's evaluation that he had achieved the maximum feasible recovery as of November 18, 2014. *See Carmona v. Toledo*, 215 F.3d 124, 133 (1st Cir. 2000) ("Courts are rightfully cautious about requiring a defendant to effectively 'prove a negative' in order to avoid trial on a specious claim.  Thus, if the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden.") (internal citations omitted).  The court will therefore declare November 18, 2014, as the termination date for the maintenance and cure obligation.[6]

Finally, Block Island requests that it be awarded attorneys' fees because Rogers and his counsel allegedly acted in bad faith throughout the litigation. *See Mullane v. Chambers*, 333 F.3d 322, 337-338 (1st Cir. 2003) ("[A] court possesses inherent equitable powers to award attorneys' fees against a party that "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"); s*ee also Galveston Cty. Nav. Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 358 (5th Cir. 1996) ("Tort-like punitive

---

[6] Whether Block Island's calculation of $49.31 in daily maintenance during the time Rogers was living in Fall River was accurate, and the amount of overpayment that should be offset against an award to Rogers, if any, are matters for the jury.

damages are awarded on the basis of the merits of a case, while bad-faith fee-shifting punishes abuses of the litigation process," quoting *Guevara v. Mar. Overseas Corp.,* 59 F.3d 1496, 1503 (5th Cir. 1995)).  Block Island alleges a litany of abuses of the discovery process, some of which were memorialized by the court's Order of October 23, 2015 ("[Rogers] for whatever reason has refused to cooperate with discovery in this case by failing to produce . . . HIPAA and IRS authorizations within the timeframe ordered by the court and by interposing blanket objections or obfuscating answers to requests for document production and answers to interrogatories."  Dkt. # 40).  While the court entered ameliorative orders at Block Island's request, it was never asked or agreed to impose additional monetary sanctions.  The request for such sanctions comes too late now.[7]

## ORDER

For the foregoing reasons, the court <u>ADJUDGES</u> and <u>DECLARES</u> November 18, 2014, as the termination date of Block Island's maintenance and cure obligation to Rogers.  Block Island's motion for summary judgment on Count I of its Complaint and Count IV of Rogers's counterclaim is <u>DENIED</u>.  Block Island's motion for summary judgment on Count III of

---

[7] That said, the court notes that the apparently deliberate failure of Rogers' law firm to promptly supply accurate information about Rogers's rental expenses is unlikely to sit well with the jury.

Rogers's counterclaim is <u>ALLOWED</u>.  Block Island's request for attorneys'

fees is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE